**ESTATE of Joseph L. HASKINS, Deceased, Lloyd L. Edwards and Jayne C. Haskins, Executors, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 20269.**

United States Court of Appeals Ninth Circuit.

Feb. 28, 1966.

Paul E. Anderson, Richard A. Wilson, Barbara Ashley Phillips, of Kent & Brooks, San Francisco, Cal., for appellant.

Richard M. Roberts, Acting Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Loring W. Post, Gilbert Andrews, Attys., Dept. of Justice, Washington, D. C., Cecil F. Poole, U. S. Atty., Richard L. Carico, Marvin B. Haiken, Asst. U. S. Attys., San Francisco, Cal., for appellee.

Before CHAMBERS, HAMLEY and ELY, Circuit Judges.

ELY, Circuit Judge:

This appeal is from a District Court decision in favor of the Government in an action for refund of federal estate taxes. The action was instituted by taxpayer under 28 U.S.C. § 1346(a) (1) (1964). The District Court's Findings of Fact and Opinion are reported at 240 F.Supp. 492 (N.D.Cal.1965). Taxpayer properly invokes our jurisdiction under 28 U.S.C. § 1291 (1964).

At issue is the propriety of inclusion in the decedent's gross estate of $185,560, the value of a trust created incident to a division, by agreement, of community property. In 1947, the decedent, Joseph L. Haskins, and his then wife, Mildred, separated after thirty-four years of marriage. On March 1, 1947, they entered into an agreement for the distribution of property accumulated during the marriage and for the settlement of all claims

made by each against the other. The value of the community property, in which each of the parties owned a vested community one-half interest, was declared by them to be $333,647 as of the date of the execution of agreement. The agreement became effective on January 1, 1948, and evidence was introduced from which it might be concluded that the fair market value of the community property as of that date was, in fact, $482,419.

Under the agreement's terms, a one-hundred thousand dollar trust, known as the Mildred E. Haskins Trust, was to be created in which Mildred would retain a life estate and the couple's three children would take the remainder. Moreover, it was agreed that Joseph should either give $100,000 outright to the children or should create a $100,000 trust in which he might reserve a life estate with remainder to the children. The balance of the community property was set apart to Joseph, and he agreed to assume certain obligations which we shall discuss.

Joseph chose to create the trust, known as the Home Ranch Trust, and it is that trust which is directly involved in the present dispute. Joseph died on October 2, 1959, and his executors filed an estate tax return with the District Director of Internal Revenue in which the entire corpus of the Home Ranch Trust was included in the decedent's gross estate. Subsequently, the executors filed a claim for refund supported by an amended estate tax return in which the value of the corpus of the Home Ranch Trust was wholly excluded from decedent's gross estate in the computation of the federal estate tax liability. The claim was disallowed, and the suit for refund of $56,-594.37, plus interest, was unsuccessfully prosecuted in the court below.

Appellants challenge the District Court's conclusion that the Home Ranch Trust was not established by Joseph in consideration for Mildred's surrender to him of the excess community property. It is also urged by appellant that the trial court disregarded the evidence in finding, as a fact, that the excess community property transferred to Joseph by Mildred was not consideration for the establishment of the Home Ranch Trust.

Section 2036 of the Internal Revenue Code of 1954 provides that the entire value of all property transferred by the decedent in which he retains a life estate for himself shall be included in the decedent's gross estate unless the transfer was made pursuant to a "bona fide sale for an adequate and full consideration in money or money's worth". If the transfer does not meet the test of being a "bona fide sale for an adequate and full consideration in money or money's worth", then the value of the transferred property, as of the time of decedent's death, is to be included in the gross estate with deduction of the value of any consideration received therefor. Int. Rev.Code of 1954, § 2043.

■ The District Court, finding that there was no consideration for the transfer, held that the entire value was includible in the decedent's gross estate. We have determined that there was sufficient evidence to support the District Court's conclusion. It justified a belief that the "consideration", if any, for the "excess community property" received by Joseph was not his establishment of the Home Ranch Trust, but rather his agreement (1) to pay Mildred alimony of $250.00 per month for ten months; (2) to pay $1000 as a fee for Mildred's attorney; (3) to maintain, at a cost of $521.34 per year, a twenty-thousand dollar insurance policy on his own life with the principal payable to Mildred or, should she predecease him, to the children; (4) to pay Mildred's income taxes, including those arising from her income from her separate property, for the year 1947; (5) to support one of the couple's children, a minor son then aged fifteen and then attending boarding school; and (6) to provide for the adult children, two daughters, in case of any emergency.

■ As we have said, the value of the community property at the time the agreement was made was stated to be $333,645, and the value as of the effective date of the agreement, January 1, 1948, may have been as much as $482,-419. The property being community,

half of that not placed in the trusts may be said to have been relinquished by Mildred. This amounts either to $66,823 or to $141,209, depending upon which evaluation is adopted. The evidence makes it clear that both parents were devoted to their children and keenly mindful of parental obligation. This is a factor which was properly to be weighed by the trial judge in determining whether or not the parents' creation of trusts running to the ultimate benefit of their children was done for monetary consideration. Some of the obligations assumed by Joseph were not subject to evaluation as of the time of the agreement and, quite conceivably, could have imposed expenses upon him which would exceed the value of the "excess" community property surrendered to his use. Under these circumstances, the district judge may have reached the reasonable conclusion that the parties aimed to effect, ultimately, an approximate equal division of the property. We cannot say, therefore, that the trial court's decision that the trust was not established by Joseph in exchange for his receiving the excess community property was clearly erroneous. See Guenzel's Estate v. Commissioner, 258 F.2d 248 (8th Cir. 1958).

In addition to the sound factual bases for the decision of the court below, there are also strong policy considerations which support the result. As Judge Thompson wrote,

"The fact that active and effective study of estate planning may occur only when the marriage itself is tottering should not serve to characterize the legal relationships in property then created simply as the result of some form of arm's length bargaining for the tangible fruits of the marriage. * * * Why should an estate plan be considered anything else just because it is effectuated as part of a property settlement agreement between spouses who obtain a divorce? Why should these trusts be taxable if Mildred and Joseph Haskins had continued to live in conjugal felicity and not taxable because their marriage dissolved?"

240 F.Supp. at 495. Under the facts of this case, we answer, "There should be no distinction".

Appellants vigorously contend that United States v. Past, 347 F.2d 7 (9th Cir. 1965), decided by our court a few months after the decision of the court below, controls and that it requires a reversal. We do not agree. In *Past,* the majority wrote that "[t]he fact alone that the transfer into the trust was part of a property settlement agreement incident to a divorce is not sufficient to make the transfer of the decedent one for an adequate and full consideration within the meaning of section 2036." 347 F.2d at 12. In *Past,* only one trust was created, and the majority emphasized the importance of findings made by the trier of fact as to the source of the corpus. Adopting the same approach here, we, as was the majority in *Past,* are strongly influenced by the trial court's factual determinations. Furthermore, the fact that two trusts were created, each with a corpus of $100,000 and in each of which a spouse was an income beneficiary only, points to the conclusion that there was not an exchange but merely a division of jointly owned property. In effect, this was the conclusion of the District Court, and it is obviously inconsistent with a view that either trust was established in exchange for money or money's worth.

Finally, it is urged by appellants that the trial court erred in excluding certain testimony claimed to bear upon Mildred's motivation in surrendering the excess community property to her husband. The offered testimony was that of Joseph L. Haskins, Jr. Its purport was that when his mother, who was deceased at the time of trial, asked him to serve as executor of her estate some seven years after the events relating to the division of the property had transpired, she told the witness that she had used her interest in the community property to secure for her children the Home

Ranch and adjoining property. Hearsay declarations of a deceased person as to his past intent may sometimes be admissible in exception to the hearsay rule, but the declaration which was offered here was so remote in time from the event to which it related that its rejection, in a non-jury trial, was not an improper exercise of the trial court's sound discretion. See Valdez v. United States, 326 F.2d 598, 599 (9th Cir. 1963).

Affirmed.