629 P.2d 1237

**Jose GARCIA, Plaintiff-Appellant,**

v.

**CO–CON, INC., and Mountain States Mutual, Defendants-Appellees.**

**No. 4548.**

Court of Appeals of New Mexico.

May 26, 1981.

Anthony F. Avallone, Las Cruces, for plaintiff-appellant.

William W. Bivins, Bivins, Weinbrenner, Regan, Richards & Paulowsky, P. A., Las Cruces, for defendants-appellees.

## OPINION

SUTIN, Judge.

Plaintiff appeals from a judgment in a workmen's compensation case that plaintiff take nothing by his complaint and that it be dismissed with prejudice. We affirm.

The trial court found:

Plaintiff sustained an accidental injury while in the scope and course of his employment on August 16, 1977, and, as a result, plaintiff sustained bilateral inguinal herniae which resulted in temporary total disability. It was surgically repaired and plaintiff completely recovered from his disability. Defendant insurer paid all plaintiff's medical, surgical and weekly benefits. Plaintiff suffers from osteoarthritis which antedated the date of the accident herein and plaintiff's disability, if any, as of the date of trial was not the direct and proximate result of the accident of August 16, 1977.

Defendants made much reference to the failure of plaintiff to challenge any of the court's findings. We find that plaintiff sufficiently and specifically challenged three of the pertinent findings.

Plaintiff raises four points in this appeal, each of which will be discussed *seriatim.*

A. *Payment of disability benefits for three months after the accident was an admission of disability during that time, but not at the time of trial.*

Plaintiff was employed by Co-Con as a cement finisher. On August 16, 1977, plaintiff suffered an injury when a cement finishing machine tipped over on him. The employer sent plaintiff to Dr. P. G. Cornish III, a medical doctor in Albuquerque who specialized in general surgery. Dr. Cornish examined plaintiff on August 27, 1977 and found that plaintiff had a small hernia on the right side. There were no other complaints. Dr. Cornish approved his return to work and saw plaintiff again on September 6, 1977. An examination then showed that plaintiff had hernias on both sides and recommended repair at some point. No other complaints were made. On September 10,

1977, plaintiff advised Dr. Cornish that he wanted the hernias repaired in Las Cruces where he lived and Dr. Cornish referred plaintiff to a Las Cruces surgeon.

On September 15, 1977 plaintiff was admitted to the Memorial General Hospital in Las Cruces for surgical correction of the hernias which correction was performed the next day. The post-operative course was essentially uncomplicated and plaintiff was discharged on September 21, 1977, to be followed as an outpatient. Plaintiff remained an outpatient until the end of November 25, 1977. Thereafter, plaintiff did not return to work on the order of a third doctor. Plaintiff claimed disability thereafter.

Defendants furnished medical attention and paid workmen's compensation weekly benefits until November 23, 1977, during the healing period.

Plaintiff had developed osteoarthritis in the spine over a ten year period. Medical testimony was presented that plaintiff's back complaints were not related to his accidental injury of August 16, 1977; that post-operatively, it was distinctly unusual six weeks hence for someone to be unable to assume normal activities including heavy labor in an industrial setting. Both of the hernias had healed solidly. Plaintiff was able to return to work, including heavy labor, on November 23, 1977.

In the face of this strong and convincing evidence which supported the trial court's findings, plaintiff claims that the payment of benefits during his healing period was an admission that the disability was a direct and natural result of the workman's accident. If, by chance, plaintiff refers to disability subsequent to post-operative care, or at the time of trial, plaintiff was mistaken. This point, inadequately presented, is without any semblance of merit.

B. *Dr. Cornish's deposition was properly admitted in evidence.*

The deposition of Dr. Cornish was taken on November 15, 1978. Plaintiff was represented by Patrick H. Kennedy, a friend of the attorney of record, and defendant was represented by William W. Bivins. Mr. Bivins announced:

> For the record, this deposition is being taken according to the usual stipulations and the doctor waives signature.

The deposition was then taken without any objections. Mr. Kennedy participated in the examination of Dr. Cornish. The deposition was filed of record December 29, 1978, and trial was held May 18, 1979. At trial, defendant offered in evidence the deposition of Dr. Cornish. Plaintiff objected because no stipulation was entered into that Dr. Cornish's signature was waived by the parties. The trial court ruled that plaintiff should have alerted defendant if he intended to object to the lack of waiver. The deposition was admitted in evidence.

Rule 30(E) of the Rules of Civil Procedure reads in pertinent part:

> * * * When the testimony is fully transcribed the deposition *shall* be submitted to the witness for examination and *shall* be read to or by him, unless such examination and reading are waived by the witness and the parties. * * * The deposition *shall* then be signed by the witness, *unless the parties by stipulation waive the signing* * * *. [Emphasis added.]

Rule 30(E) should be read in conjunction with Rule 32(C)(4) which provides:

> * * * Errors and irregularities in the manner in which the testimony is transcribed or the deposition is prepared, signed, certified, sealed, indorsed, transmitted, filed, *or otherwise dealt with by the officer under Rules 30 and 31 are waived* unless a motion to suppress the deposition or some part thereof is made with reasonable promptness *after such defect is, or with due diligence might have been ascertained.* [Emphasis added.]

There are two methods under which a waiver of signature by the parties can be accomplished: (1) by stipulation of the parties; (2) absent a stipulation, by failure to file a motion to suppress with reasonable promptness after the lack of signature is, or with due diligence, might have been ascertained.

(1) *There was no stipulation of the parties.*

Mere physical presence alone of an opposing lawyer who cross-examined the witnesses does not constitute a waiver of signature. *Crabtree v. Measday*, 85 N.M. 20, 508 P.2d 1317 (Ct.App.1973); *Bernstein v. Brenner*, 51 F.R.D. 9 (D.C.1970). Nevertheless, we are confronted with the silence of Kennedy when Bivins announced that "the doctor waives signature." Does silence constitute a waiver by stipulation of the doctor's signature?

A stipulation is an agreement between lawyers respecting business before the court, and, like any other agreement or contract, it is essential that the parties or their lawyers agree to its terms. *McBain v. Santa Clara Savings & Loan Association*, 241 Cal.App.2d 829, 51 Cal.Rptr. 78 (1966); *First Sec. Bank v. Neibaur*, 98 Idaho 598, 570 P.2d 276 (1977); *First Nat. Bank In Dallas v. Kinabrew*, 589 S.W.2d 137 (Tex. Civ.App.1979). "Why require a stipulation unless some valuable right is being waived or given up?" *Bourne v. Atchison, Topeka and Santa Fe Railway Co.*, 209 Kan. 511, 497 P.2d 110, 114 (1972).

Silence amounts to assent when one lawyer says "it is stipulated and agreed" and the opposing lawyer remains silent. *Bloom v. Graff*, 191 Md. 733, 63 A.2d 313 (1949). *McBain, supra*, said:

> * * * However, *assent to a stipulation* need not be made in a formal manner and under the particular circumstances of a case, where a party's counsel remains silent and *makes no objection to the stipulation*, his passive acquiescence may constitute an assent to it. * * * [Emphasis added.] [51 Cal.Rptr. 84.]

In the instant case, Bivins did *not* say: "It is stipulated and agreed that the doctor waives signature."

Silence on the part of Kennedy did not constitute an assent by plaintiff to a stipulation.

(2) *A motion to suppress was not filed by plaintiff.*

The remaining question is:

Did plaintiff's lawyer fail to file a motion to suppress with reasonable promptness after such absent signature of Dr. Cornish is, or with due diligence might have been ascertained?

If plaintiff's lawyer did fail to so file a motion in time within the meaning of Rule 32(C)(4), the lack of signature was waived and the deposition was properly admitted in evidence. If plaintiff's lawyer's objections to Dr. Cornish's deposition use at trial were made with reasonable promptness and due diligence within the meaning of Rule 32(C)(4), *supra*, the deposition of Dr. Cornish was not admissible in evidence. *Crabtree, supra*.

To determine the answer to this question, this case was remanded to the district court for hearing to determine the following facts:

(1) On what date did plaintiff's attorney first know that Dr. Cornish's deposition was not signed?

(2) On what date could plaintiff's lawyer, with due diligence, have ascertained that the deposition was not signed by Dr. Cornish?

(3) Did plaintiff's lawyer fail to file a motion to suppress with reasonable promptness?

Prior to the hearing, defendant submitted a request for admission of facts. Avallone, plaintiff's attorney, admitted that Kennedy attended the Cornish deposition as plaintiff's attorney and that the deposition was delivered to Kennedy's office in Albuquerque on December 28, 1978. Avallone denied that Kennedy had access to the Cornish deposition since December 28, 1978; that Kennedy forwarded the copy received, a photocopy not signed by the court reporter, to Avallone in late December, 1978 or January, 1979; that the original deposition remained sealed until the day of trial and there was no intimation from defendants that the deposition would be used until defendant offered it at trial; that until the Cornish deposition was offered, there was no issue concerning it and there was no reason to inquire about it. Avallone also

denied that, at the deposition, the lawyers present and Dr. Cornish agreed to waiver of signature.

At the hearing, Avallone was asked these questions by the court to which he made these answers, omitting comments:

Q. What day did you or Mr. Kennedy first know that Dr. Cornish's deposition was not signed?

A. [T]here's a note from Pat Kennedy. * * * He wrote to me and he said the deposition didn't turn up much of anything. * * * I can honestly say that I wasn't concerned and it first became a conscious thing as far as I'm concerned a day or two before the trial when I was preparing for it * * *.

Q. On what date did Plaintiff's lawyer, with due diligence, ascertain that the deposition was not signed by Dr. Cornish?

A. I wasn't concerned, and consequently, when they first alerted me that they were going to offer this as evidence during the trial, I promptly alerted the court to the problem that the want of a stipulation, in the absence of a signature, caused the defendants—

The trial court found that plaintiff's attorney first knew that the deposition of Dr. Cornish was not signed a day or two before trial on May 18, 1979; that plaintiff's lawyer, Kennedy, with due diligence could have ascertained that the deposition was not signed by Dr. Cornish on or about the 28th of December, 1978, and that plaintiff's lawyers failed to file a motion to suppress with reasonable promptness. The court's findings are precise and correct.

Plaintiff relies upon a rule that he can sit idly by until defendant indicates that the deposition will be offered in evidence because it is defendant's deposition, not plaintiff's and plaintiff is non-interested; that at this point, plaintiff must file a motion to suppress or object to its admission; that this rule of suppression becomes applicable when the defect, the lack of signature is, or with due diligence cannot be, ascertained.

Plaintiff' not only had ample time to ascertain the absence of the doctor's signature, plaintiff had actual knowledge within time to file a motion to suppress the deposition but failed to do so. Plaintiff waived the error. *Kawietzke v. Rarich*, 198 F.Supp. 841 (D.C.Pa.1961).

*Mound Rose Cornice & S. M. Wks. v. H. Kalicak Const. Co.*, 454 S.W.2d 603 (Mo.App. 1970) held that when plaintiff had notified defendant by motion for summary judgment that plaintiff was relying on defendant's deposition, and defendant knew the deposition was unsigned but failed to invoke the rule requiring depositions to be signed, defendants waived the rule.

*Crabtree, supra*, relied on by plaintiff was a case in which signature had not been waived but plaintiff did not buy a copy of the doctor's deposition. At a pretrial conference on the day before trial, the envelope that contained the doctor's deposition was opened, and that night it was learned that the deposition was not signed. At commencement of trial, when defendant announced that the doctor's deposition would be read, plaintiff immediately objected. The objection was overruled and the deposition was read in evidence. In reversing, the court said:

> The objections made to the use of Dr. Breck's deposition were made with reasonable promptness and due diligence within the meaning of Rule 32(d), supra. Plaintiff had no duty before trial to take steps to open the deposition and inspect it. [Citations omitted.]

In *Crabtree*, the defect was discovered the night before trial. The next morning at the commencement of trial, immediately after defendant announced that the doctor's deposition would be read, Crabtree objected.

In the instant case, at the opening of trial, the court called for witnesses. Defendant announced that it was calling Dr. Cornish by deposition. Plaintiff made no objection. During the presentation of the defense, defendant offered the Cornish deposition and plaintiff objected for the first time. The failure to object at the com-

mencement of the trial constituted a waiver of plaintiff's rights. *Valdez v. United States,* 326 F.2d 598 (9th Cir. 1963).

Rules 30(E) and 32(C)(4) were designed to put the burden on the party who takes the deposition to comply with the rules to avoid problems of this nature. If the party who has the burden fails to comply with the rules, the duty shifts to the opposing party to comply with the rules in order to protect his rights. Lawyers should not use these rules lackadaisically, especially so when use of the deposition at trial is an essential ingredient.

Plaintiff failed to file a motion to suppress or to object in time to the admission of Dr. Cornish's deposition. The lack of signature was waived and Dr. Cornish's deposition was properly admitted in evidence.

Plaintiff raised two additional points: (1) the workman met his burden on proving his total disability and defendants chose not to address the issue; and (2) the hypothetical questions fail because of lack of proof of fact premises and also because they are not material. These points have been reviewed and merit no discussion.

The trial court's findings were sustained by strong and convincing evidence. Reliance upon minor episodes of the trial lose their significance in a search for relief in this appeal.

Affirmed.

IT IS SO ORDERED.

LOPEZ, J., concurs.

ANDREWS, J., concurs specially.

ANDREWS, Judge (specially concurring).

I concur with the *result* reached in this opinion. I suggest that there is authority for the proposition that the voluntary payment of benefits over a period of time is not an admission by the employer that the disability was a direct and natural result of the workman's accident. *Romero v. S. S. Kresge Co.,* 95 N.M. 484, 623 P.2d 998 (Ct. App.1981), so holds. Judge Sutin's dissent in that case and his opinion in *Perea v. Gorby,* 94 N.M. 325, 610 P.2d 221 (Ct.App. 1980), are to the contrary.